IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA BUCKWALTER and JOHN BUCKWALTER, h/w, | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 12-2586 |
| US AIRWAYS, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

**SCHMEHL, J.**                                                                                              **JANUARY 9, 2014**

**I.     INTRODUCTION**

Plaintiffs, Cynthia Buckwalter and John Buckwalter, husband and wife, ("Plaintiffs"), brought the instant action, contending that Mrs. Buckwalter suffered personal injury while exiting a US Airways ("Defendant") plane via air stairs when another passenger descending the stairs behind Mrs. Buckwalter fell and knocked her onto the tarmac. Before the Court is Defendant's Motion for Summary Judgment, Plaintiffs' opposition thereto, and Defendant's reply. For the following reasons, Defendant's motion is denied.

**II.    LEGAL STANDARD**

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. Anderson, 477 U.S. at 251-52.

### III.   FACTUAL BACKGROUND

On February 20, 2011, Plaintiffs were passengers on US Airways international flight 1209 from Philadelphia, Pennsylvania to St. Maarten. (See Am. Compl. ¶ 13.) Upon arrival in St. Maarten, Plaintiffs disembarked using air stairs. (C. Buckwalter Dep., 19.) When Mrs. Buckwalter stepped onto the landing at the top of the air stairs, she was carrying only her purse, (C. Buckwalter Dep., 10, 33-34) and she held onto the railing. (C. Buckwalter Dep., 14, 19.) Mrs. Buckwalter did not request assistance from the crew during the deplaning process. (C. Buckwalter Dep. 33-34.)

Another passenger on the flight, M. Hallsted Christ, departed the plane after Mrs. Buckwalter but before Mr. Buckwalter. (C. Buckwalter Dep., 15; J. Buckwalter Dep. 99-100, 79.) Mr. Christ also did not request assistance from the flight crew during the deplaning process. (Christ Dep. 29.) As Mr. Christ was descending the air stairs behind Mrs. Buckwalter, he fell into her and knocked her onto the tarmac. (Christ Dep., 23, 33-34.) Mr. Christ does not know what caused him to fall, but testified that "I believe that if anything it was that I was just overloaded with my luggage." (Christ Dep., 23.) Mrs. Buckwalter has no memory of her fall, nor did Mr. Buckwalter observe her fall. (C. Buckwalter Dep., 13-14, J. Buckwalter Dep., 78-82.) The air stairs were observed to be in "working condition," with no defects or abnormalities. (Stallman Dep., 166-167.) Mr.

Buckwalter did not observe anything unusual about the stairs as he descended them behind his wife and Mr. Christ. (J. Buckwalter Dep., 100-101.)

## IV. DISCUSSION

### A. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER MRS. BUCKWALTER'S INJURIES WERE CAUSED BY AN "ACCIDENT."

Defendant argues that it is entitled to summary judgment because the incident at issue here was not caused by an "accident" under the Montreal Convention, which presents the sole cause of action available to Plaintiffs. Plaintiffs argue that a genuine issue of material fact exists as to whether or not the incident in question was an accident under the Convention, and therefore, summary judgment should be denied. For the reasons that follow, I find that there is a genuine issue of material fact as to whether Mrs. Buckwalter's fall was an accident under the Montreal Convention; therefore, Defendant's Motion for Summary Judgment will be denied.

Plaintiffs' claims are governed by the Convention for the Unification of Certain Rules for International Carriage by Air ("the Montreal Convention"). The Montreal Convention "was the product of a United Nations effort to reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements to which the Warsaw Convention system of liability consists.'" Sompo Japan Insurance, Inc., v. Nippon Cargo Airlines Co., Ltd., 522 F.3d 776, 780 (7th Cir. 2008) (quoting Ehrlich v. American Airlines, Inc., 360F.3d 366, 371 n. 4 (2nd Cir. 2004). The Montreal Convention "unifies and replaces" the Warsaw Convention. Id. at 789. Cases interpreting provisions of the Warsaw Convention apply to cases interpreting

3

"substantively similar" provisions of the Montreal Convention.  Best v. BWIA West Indies Airways Ltd., 581 F.Supp.2d 359 (E.D.N.Y. 2008).

>Chapter II, Article 17 of the Montreal Convention states:
>
>The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.[1]

Neither the Montreal nor the Warsaw Convention defines the term "accident." However, the Supreme Court defined the term accident in the context of the Convention in Air France v. Saks, 470 U.S. 392, 394-95, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). In Saks, the plaintiff alleged that she suffered hearing loss following the plane's typical descent to its destination. Because the Convention requires that an accident cause the alleged injury, the Court concluded that liability "arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." Id. at 405. This definition of accident should be "flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." Id. "Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 406.

Defendant argues that, in addition to the requirement that the accident be an unexpected or unusual event external to the plaintiff, the Supreme Court's definition of "accident" also includes a requirement that the event result from some malfunction or abnormality in the aircraft's operation. In making this argument, Defendant relies on several district court cases from Massachusetts, Hawaii, New York and Puerto Rico

---

[1] This language is similar to the Warsaw Convention, which stated that the "carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft…"

4

which require a two-prong test be met in order for an "accident" to be found under the Montreal Convention.  Specifically, these districts require that "1) an unusual or unexpected event that was external to [the plaintiff] occurred, and 2) this event was a malfunction or abnormality in the aircraft's operation."  <u>Goodwin v. British Airways PLC</u>, 2011 WL 3475420, *11 (D. Mass. Aug. 8, 2011) (quoting <u>Gotz v. Delta Air Lines, Inc.</u>, 12 F.Supp.2d 199, 201-02 (D. Mass. 1998). In response, Plaintiffs argue that there is no "second, aircraft operation prong" to the definition of accident under the Convention, and that the cases which find a second prong is necessary have been criticized and rejected by other courts.  Specifically, both the 9th Circuit and the Southern District of Florida have found that there is no requirement that an accident under the Convention be related to the operation of the aircraft. No court in this district has explicitly held that in order to prove an accident occurred under the Convention, the evidence must show the incident was related to the operation of the aircraft.[2] However, there is no need to decide this split in authority at this time, as a review of the evidence in this case shows that even if a plaintiff in this district must meet the "second prong" which requires the accident to be related to the operation of the aircraft, there remains a genuine issue of material fact as to whether Plaintiffs' injuries in this matter were an "accident" as defined by the Convention.

---

[2] My colleague, the Honorable Mary L. McLaughlin, had the opportunity to address what qualifies as an "accident" under the Montreal Convention in <u>Schaefer-Condulmari v. US Airways Group, LLC</u>, 2012 WL 2920375 (E.D. Pa. July 18, 2012). The arguments in that case turned on whether a Plaintiff who allegedly ordered a gluten-free meal being served a meal with gluten was an "unexpected or unusual event."  As the arguments in that case focused on the first prong, Judge McLaughlin did not have the opportunity to decide if this District would apply the second, aircraft operation prong to the definition of an "accident."  As Defendants pointed out in their reply, if a passenger ordered a gluten-free meal and was not served a gluten-free meal by the flight crew, the second prong would obviously be met due to the involvement of the flight crew in the serving of the meal.

Defendant argues that a fellow passenger falling into Mrs. Buckwalter and knocking her down while descending air stairs was not "related in any way to the operation of the aircraft or any act of the crew," and is therefore not an accident under the Montreal Convention. (Def's Memo of Law in Support of Mtn for Summ. Jdgmt, p. 7.) I reject this argument. Even assuming, *arguendo*, that this district would require the second, aircraft operation prong to be met in order to meet the definition of "accident" as intended by the Convention, and viewing all evidence in a light most favorable to Plaintiffs, Mr. Christ's fall into Mrs. Buckwalter could very well relate to "an act of the crew," thereby satisfying the "aircraft operation prong." Therefore, Defendant's summary judgment motion will be denied.[3]

First, there is a genuine issue of material fact as to whether the deplaning process was disorderly or not. Mr. Christ testified that "there were a lot of people all pushing to try to get off the plane. And it was sort of disorderly frankly..." (Christ Dep. 14.) Mr. Christ also testified that as he was lining up and exiting the plane, he felt as if he were being "hurried." (Christ Dep. 14-15.) Similarly, Mrs. Buckwalter testified that there was crowding as she was exiting the plane, which she described as follows:

> Q. Do you recall what kind of physical contact was made?
>
> A. Behind, sort of, crowding-push. You know . . . an invading-your-personal-space feeling, pressure.

---

[3] Defendant does not argue that Plaintiffs cannot meet the first "prong" of the test to prove an accident occurred under the Convention. There is no argument made that Mrs. Buckwalter's injuries were not caused by an unexpected or unusual event or happening that was external to her. There is no question that Mr. Christ, a fellow passenger, falling down air stairs into Mrs. Buckwalter is "external" to her. Further, I find that a genuine issue of material fact exists as to whether Mr. Christ's falling into Mrs. Buckwalter was an "unexpected or unusual event." All the flight attendants on Flight 1209 on the day of Mrs. Buckwalter's incident testified that they had never experienced an incident where a passenger fell down air stairs in their years as flight attendants. (See Stallman Dep. 150; Sours Dep. 45; Ward Dep. 87-88; Snow Dep. 71.) Therefore, Defendant's argument that Mrs. Buckwalter's injuries were not caused by an "accident" under the Convention turns on the alleged "second prong" of the test.

> Q. My question is, did anybody touch you while you were standing there.
>
> A. Yes.
>
> Q. Okay. And where on your body were you touched while you were standing there waiting for the door to open?
>
> A. It would have been in the back and the back of my leg.

(C. Buckwalter Dep. 17.)

Mr. Buckwalter testified that as they were waiting to exit the plane he "really felt pushed in and close." He further testified as follows: "I remember feeling, like, somebody's bag against my leg and, you know, people were kind of inching toward the door and there was what I probably call a polite pushing. I mean, it wasn't like everyone was pushing and shoving, but they were kind of saying, you know, hurry up, you know, kind of that feel. And they would put as much pressure on you as they possibly could without you turning around and giving them a look…" (J. Buckwalter Dep, 79-80.) Mr. Buckwalter stated that he felt "uncomfortable" because "there was not kind of an orderly single-file type of deplaning." (J. Buckwalter Dep., 80.) However, Flight Attendant Lela Sours testified that it was a "very routine deplaning process." (Sours Dep. 21.)

If it is true that there was a disorderly deplaning process that involved pushing by the passengers, and the flight crew took no action to ensure an organized deplaning process, then an omission of the flight crew may have occurred.

Further, there is a dispute as to whether or not, just prior to deplaning, the flight crew read the warnings required by Defendant's policies and procedures that inform passengers that air stairs are going to be used in the disembarking process. Mrs. Buckwalter, Mr. Buckwalter and Mr. Christ all testified that no warnings were given

prior to deplaning. (C. Buckwalter Dep. 13-15, 16; J. Buckwalter Dep. 87; Christ Dep. 15-16.)[4] However, Flight Attendant Jackie Stallman testified that she "read the standard announcement on this flight" which included text regarding the air stairs. (Stallman Dep. 112-116). Flight Attendant Sours also testified that Stallman had made "the arrival announcement that [they] would be deplaning by air stairs, please be careful, please hold the handrail." (Sours Dep. 21.) Whether the announcement regarding the use of air stairs was made or not is a fact for the jury to determine. If it is true that the flight crew was required by Defendant's policies to make an announcement warning the passengers that they were going to deplane via air stairs and failed to make that announcement, an omission of the flight crew occurred and Mrs. Buckwalter's fall may be related to the operation of the aircraft. Initially, I find that there is a genuine issue of material fact as to whether the flight attendants made the necessary precautionary announcement that would warn passengers about the use of air stairs during deplaning.

"In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." Saks, 470 U.S. at 405. The factual circumstances surrounding the deplaning process in this matter may have been such that they would have naturally required the assistance of the flight crew. I choose to "flexibly appl[y]" the definition of accident under the Convention as directed by the Supreme Court. Saks, 470 U.S. at 405. Therefore, I also find there is a genuine issue of material fact as to whether Mrs. Buckwalter's accident was related to an act or omission of the crew and would satisfy the second prong of the accident inquiry, assuming the second prong would be applied by this Court. Taking the evidence in the light most favorable to the plaintiffs, there is enough of a dispute on the question of

---

[4] Mr Christ later conceded that it was possible that the announcement had been made. (Christ Dep. 28-29.)

8

whether the flight crew should have taken certain actions that the I must deny summary judgment.[5]

### B. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFFS' DAMAGES ARE LIMITED BY THE MONTREAL CONVENTION.

Defendant argues that even if I find there is a genuine issue of material fact as to whether Mrs. Buckwalter's fall was an "accident," it is entitled to summary judgment on Plaintiffs' claims pursuant to Article 21(2) of the Montreal Convention, which limits a plaintiff's recovery when an accident is not caused by the negligence or wrongful acts or omissions of the airline or its personnel, or when the accident is caused solely by a third party's negligence. Montreal Convention Art. 21. Defendant further argues that there is no evidence that Mrs. Buckwalter's injuries were caused by an act or omission of US Airways, but rather were only due to the negligence of Mr. Christ. As discussed above, there is an genuine issue as to whether the flight crew's negligence and/or omissions during the deplaning process caused Plaintiffs' injuries. Therefore, I find this argument to be unpersuasive and deny Defendant's Motion for Summary Judgment on this issue.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is denied. An appropriate order follows.

---

[5] Defendant argues that because Mrs. Buckwalter's claim fails, her husband's loss of consortium claim must also fail. As discussed above, I find that there is a genuine issue of material fact as to Mrs. Buckwalter's claim; therefore, Mr. Buckwalter's claim also survives summary judgment.